IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| CAROLYN FAYE BUCHANAN, | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| v. | § | Civil Action No.  3:15-CV-3287-BH |
| | § | |
| NANCY A. BERRYHILL, ACTING, | § | |
| COMMISSIONER OF THE SOCIAL | § | |
| SECURITY ADMINISTRATION, | § | |
| | § | |
| **Defendant.** | § | **Consent** |

## MEMORANDUM OPINION AND ORDER

Pursuant to the consent of the parties and the order of reassignment dated December 21, 2015 (doc. 15), this case has been transferred for the conduct of all further proceedings and the entry of judgment.  Before the Court are *Plaintiff's Brief on Review of the Social Security Administration's Denial of Benefits*, filed January 20, 2016 (doc. 16), *Defendant's Brief*, filed February 19, 2016 (doc. 17), and *Plaintiff's Reply to the Commissioner's Brief*, filed March 9, 2016 (doc. 18).  Based on the relevant filings, evidence, and applicable law, the Commissioner's decision is **AFFIRMED**.

## I.   BACKGROUND[1]

### A.   Procedural History

Carolyn Faye Buchanan (Plaintiff) seeks judicial review of a final decision by the Acting Commissioner of Social Security (Commissioner)[2] denying her claims for disability insurance benefits (DIB) under Title II of the Social Security Act (Act) and for supplemental security income (SSI) under Title XVI of the Act.  (R. at 1, 64.)  On July 24, 2012, Plaintiff filed her applications

---

[1]  The background information comes from the transcript of the administrative proceedings, which is designated as "R."

[2]  At the time of filing of this appeal, Carolyn W. Colvin was the Acting Commissioner of the Social Security Administration, but she was succeeded by Nancy A. Berryhill beginning January 20, 2017.

for DIB and SSI, alleging disability beginning January 17, 2011.  (R. at 179, 181.)  Her claims were denied initially and upon reconsideration.  (R. at 113, 118, 129.)  Plaintiff requested a hearing before an administrative law judge (ALJ), and she personally appeared and testified at a hearing on March 24, 2014.  (R. at 81-107.)  On June 25, 2014, the ALJ issued a decision finding that Plaintiff was not disabled and denying her claims for benefits.  (R. at 64-80.)

Plaintiff timely appealed the ALJ's decision to the Appeals Council and included new medical evidence.  (R. at 1-53.)  The Appeals Council determined that the new evidence did not provide a basis for changing the decision and denied her request for review on September 10, 2015, making the ALJ's decision the final decision of the Commissioner.  (R. at 1-7.)  Plaintiff timely appealed the Commissioner's decision under 42 U.S.C. § 405(g).  (*See* doc. 1.)

B.   **Factual History**

1.     **Age, Education, and Work Experience**

Plaintiff was born on January 17, 1961, and was 53 years old at the time of the hearing.  (R. at 85.)  She left school in the 12th grade and never received a diploma or GED.  (R. at 86.)  She had no past relevant work experience.  (R. at 104.)

2.     **Medical Evidence**

On July 28, 2005, Dr. Stephen Ozanne, M.D., performed lumbar fusion surgery on Plaintiff. (R. at 857-865.)  The surgery helped to alleviate her back pain, but she continued to experience pain in her legs.  (R. at 862-65.)  Two years after the operation, Plaintiff returned to Dr. Ozanne with complaints that she could not "stand or walk long" without pain.  (R. at 860.)  She received another procedure for bilateral sacroiliac joint injections, but later complained that the injections "seemed to help for about 3 days" before the pain returned.  (R. at 859.)

2

On June 30, 2009, Plaintiff was admitted to Green Oaks Hospital Psychiatric Emergency Services after attempting to commit suicide. (R. at 288-350.) She had attempted to overdose on Xanax and pain pills because of "numerous stressors," including the death of her husband in 2007, physical abuse by her current boyfriend, and a lack of support from her friends and family. (R. at 292.) She was diagnosed with major depressive disorder without psychotic features and depression. (R. at 333.) It was noted that she had been "self-independent" during her stay at the hospital and had been able to care for her own bathing, oral care, diet, activity, and mobility. (R. at 336.) She also had an intact memory, good cognitive functioning, and a well-organized train of thought. (R. at 339, 341.) On July 3, 2009, she was discharged with a guarded prognosis. (R. at 333.)

On February 8, 2012, Plaintiff was admitted to Parkland Memorial Hospital (Parkland) for back and neck pain. (R. at 368-77.) She described the back pain as a "4/10" dull aching pain, and the neck pain as "3/10" intermittent pain that radiated to her left shoulder. (R. at 371.) Her musculoskeletal exam showed no swelling or edema. (R. at 371.) X-rays on her cervical spine showed moderate-to-advanced degenerative disc disease. (R. at 488-90.) She was assessed as having chronic back and neck pain in her lumbar and cervical spine and was prescribed pain medication. (R. at 371-72.)

On June 15, 2012, Plaintiff returned to Parkland for neck pain. (R. at 466-79.) She received a MRI of her cervical spine that showed multilevel degenerative changes and mild-to-moderate central spinal canal stenosis. (R. at 469-71.) She was instructed to continue her pain medications and return if symptoms worsened. (R. at 469.)

On October 16, 2012, Plaintiff met with Dr. Julie Duncan, Ph. D., for a clinical interview and mental status examination. (R. at 491-98.) Dr. Duncan reported that she had an appropriate thought

process, normal though content, no perceptual abnormalities, a stable affect, "no significant difficulty" maintaining attention or concentration, variable judgment and insight, and "some difficulties" with immediate, recent, and remote memory.  (R. at 495-96.)  Plaintiff was diagnosed with major depressive disorder without psychotic features, anxiety disorder, and pain disorder.  (R. at 496.)  Dr. Duncan offered a guarded prognosis but opined that she appeared capable of handling her own finances.  (R. at 497.)

On October 26, 2012, Dr. Richard Campa, Ph.D., a state agency medical consultant (SAMC), completed a Psychiatric Review Technique form and a mental residual functional capacity (RFC) assessment for Plaintiff.  (R. at 499-516.)  He assessed Plaintiff for affective and anxiety-related disorders and determined that she had major depressive disorder and anxiety disorder.  (R. at 502, 504.)  He opined that she had mild restrictions in activities of daily living and moderate limitations in maintaining social functioning and maintaining concentration, persistence, or pace; however, her symptoms would not "wholly compromise [Plaintiff's] capacity for work related abilities."  (R. at 509-11.)  Overall, Plaintiff could understand, remember, and carry out detailed but not complex instructions and could concentrate for extended periods.  (R. at 515.)

On October 29, 2012, Dr. Jeanine Kwun, M.D., a SAMC, completed a physical RFC assessment of Plaintiff based upon the record.  (R. at 517-24.)  She opined that Plaintiff could occasionally lift and carry 20 pounds; frequently lift and carry 10 pounds; stand, walk, and sit with normal breaks for about 6 hours out of an 8-hour workday.  (R. at 518.)  Plaintiff could never climb ladders, ropes, or scaffolds but could occasionally balance, stoop, kneel, crouch, crawl, and climb ramps/stairs.  (R. at 519.)  There was no evidence of manipulative, visual, communicative, or environmental restrictions.  (R. at 520-22.)

On January 10, 2013, Plaintiff returned to Parkland for epigastric problems and back pain. (R. at 575-78.)  She had a normal range of motion in her neck and tenderness in her chest and arms. (R. at 576.)  She was prescribed Hydrocodone for the pain.  (R. at 577.)

From January 22, 2013, to February 26, 2014, Plaintiff received mental counseling at LifeNet Community Behavioral Clinic (LifeNet) for her depression, anxiety, and sleep problems.   (R. at 582-88, 603-12, 889-904, 951-58, 959-62.)  It was noted that she had a "logical and sequential" memory as well as coherent speech with a "congruent" affect. (R. at 891, 896, 898, 901.)  She was prescribed anti-depressant medication and encouraged to attend grief group counseling sessions at LifeNet. (R. at 585-86, 895.)  She was also taught relaxation techniques, including deep breathing exercises, to help with her anxiety.  (R. at 965.)

On January 28, 2013, Dr. Lawrence Ahn, D.O., performed an orthopedic evaluation of Plaintiff.  (R. at 589-94.)  She reported "9/10" pain in her back and neck, as well as leg pain that became worse with "prolonged standing."  (R. at 590.)  Dr. Ahn reported that she had "good fine motor skills," a normal heel-toe gait, and "5/5" muscle strength in the bilateral upper and lower extremities.  (R. at 592.)  Tenderness was reported in her cervical spine that affected her range of motion. (R. at 592.)  Dr. Ahn diagnosed her with chronic neck and back pain with a "fair to poor" prognosis.  (R. at 593.)

On February 12, 2013, Dr. Patty Rowley, M.D., a SAMC, completed a physical RFC assessment for Plaintiff based upon the evidence on record.  (R. at 595-602.)  She agreed with Dr. Kwun's opinions that Plaintiff could occasionally lift and carry 20 pounds; frequently lift and carry 10 pounds; stand, walk, and sit with normal breaks for about 6 hours out of an 8-hour workday.  (R. at 596.)  She further opined that Plaintiff could never climb ladders, ropes, or scaffolds, but could

occasionally stoop, kneel, crouch, crawl, and climb ramps/stairs.  (R. at 597.)  There was no evidence of manipulative, visual, communicative, or environmental restrictions.  (R. at 597-99.)

On March 18, 2013, Plaintiff returned to Parkland for back pain.  (R. at 790-92.)  She described her pain as "5/10" but said that it could be as high as "8/10" when she stood and "put weight on the affected side."  (R. at 791.)  During the physical exam, her neck and musculoskeletal system had a normal range of motion.  (R. at 792.)  She was prescribed pain medication and instructed to return if the pain became worse.  (R. at 792.)

On May 10, 2013, Jake Porsch, P.T., D.P.T., completed a functional capacity evaluation. (R. at 881-86.)  He reported that the range of motion in Plaintiff's neck and lumbar back was "decreased 90% due to pain," and her muscle strength was between a "2/5" and "3/5" for all extremities.  (R. at 881-82.)  Mr. Porsch noted that Plaintiff gave a "moderate effort" but had not been able to finish over half of the test, including the lifting/carrying, climbing, kneeling, and pushing evaluations, due to "high levels of pain."  (R. at 882.)  He opined that Plaintiff could stand and sit for up to 3 hours in an 8-hour workday and could stand for only 30 minutes before needing to lean on something to support her weight.  (R. at 882.)  Plaintiff was "not at all" able to lift, bend, squat, kneel, twist, push, or pull.  (R. at 886.)  She was, however, able to perform simple grasping, fine finger work, and low-speed assembly.  (R. at 886.)

### 3. Hearing Testimony

On March 24, 2014, Plaintiff and a vocational expert (VE) testified at a hearing before the ALJ.  (R. at 81-107.)  She was represented by an attorney.  (R. at 83.)

### a. *Plaintiff's Testimony*

Plaintiff testified that she was born on January 17, 1961, and was 53 years old.  (R. at 85.)

Her husband of 21 years had died in 2007.  (R. at 85.)  She left school in the 12th grade because she "quit and got married," and she never received a diploma or GED.  (R. at 93.)  Her last job was a part-time position at a home health care center in 2011.  (R. at 86.)  Her responsibilities at that job were to help a sick individual with basic household chores, and she would work between 10 to 12 hours a week and was paid $8.00 an hour.  (R. at 86-87.)  She left that job because her patient passed away, and she "got to the point where [she] couldn't do it anymore because of . . . [her] neck and [her] back."  (R. at 87.)  In 1998, she had worked for a trucking company, where she was responsible for "checking trucks in and out."  (R. at 101.)

When questioned about her medical conditions, Plaintiff testified that she had "four or five plates, rods, and, screws" in her spine and lower lumbar as a result of two major back surgeries.  (R. at 87.)  The first surgery had helped her back pain initially, but she had complications "probably about a year later" that required the second surgery and additional plates in her back.  (R. at 88.)  In spite of these surgeries, she still experienced back pain "constantly" that woke her up at night and required pain relief medication.  (R. at 88.)  To alleviate her pain, she laid on her stomach and put cold and hot packs on her back, but "most of the time it [did not] help."  (R. at 89.)

Plaintiff further testified that she had "some pinched nerves" in the back of her neck and experienced numbness in her hands "just about every day."  (R. at 90.)  The pain in her hands was exacerbated by chores like vacuuming, and she could not open a "new jar of jelly."  (R. at 91.)  She could use a computer and cell phone for approximately 15 minutes before her hands went numb.  (R. at 91-92.)  She had trouble sleeping due to the pain and only slept "roughly" 4 hours a night.  (R. at 92.)

Plaintiff also had breathing issues with tightening in her chest and problems not getting

7

enough air.  (R. at 93.)  These problems were exacerbated by walking and the weather.  (R. at 94.)

She had previously smoked "close to three packs [of cigarettes] a day" a year ago, but she had not

smoked a nicotine cigarette in 6 months, though she still smoked nicotine-free "vapor cigarettes."

(R. at 95.)  She had also suffered from acid reflux but was on medication that helped.  (R. at 95-96.)

When questioned about her physical limitations, Plaintiff stated that she could be on her feet

for only 15 minutes at a time and could sit between 25 and 30 minutes before her legs became numb.

(R. at 89, 96-97.)  She was unable to lift a six-pack of soda and also had problems stooping,

crouching, and crawling.  (R. at 97.)  Plaintiff was unable to occasionally lift or carry 20 pounds and

could not stand or walk for 6 hours out of an 8-hour workday.  (R. at 102.)

Regarding her mental impairments, Plaintiff testified that she had depression and anxiety,

and had attempted suicide twice.  (R. at 98.)  She had suicidal thoughts due to stress and depression,

but she was taking medication that got "rid of those suicidal thoughts."  (R. at 98-99.)  She still had

episodes of depression 3 or 4 times a week where she would cry and have anxiety attacks.  (R. at

99.)  She had been prescribed Klonopin, which helped with the attacks.  (R. at 100.)  When asked

about her social life, Plaintiff stated that she had attended church regularly but did not talk to anyone

or participate in any church group functions.  (R. at 100.)  She was able to go grocery shopping with

help from her son but sometimes had panic and anxiety attacks because she could not "handle being

around people too long."  (R. at 97-98.)

### b.    VE's Testimony

The VE testified that he had reviewed the vocational information in Plaintiff's file and

determined that there was no past relevant work experience that met the necessary level of

substantial gainful activity.  (R. at 103-04.)

The ALJ asked him to consider a hypothetical individual who had the same age and education as Plaintiff and also had the following restrictions: moderate difficulties in maintaining concentration, persistence, or pace; moderate difficulties in maintaining social functioning; limited to simple, routine tasks consistent with unskilled work that was learned by rote with simple and direct supervision; few workplace changes and variables; and no more than occasional contact with the general public.  (R. at 104.)  This hypothetical individual also had the physical RFC for light work limited to: occasionally lifting or carrying 20 pounds; frequently lifting or carrying 10 pounds; standing and walking with normal breaks for 6 hours out of an 8-hour workday; sitting with normal breaks for 6 hours out of an 8-hour workday; no limitations on pushing, pulling, or operation of hand or foot controls; only occasionally able to climb ramps/stairs, balance, stoop, kneel, or crouch; and unable to climb ladders, ropes, and scaffolds.  (R. at 104.)  The ALJ further added that this hypothetical individual must avoid even moderate exposure to fumes, odors, dusts, gases, and environments with poor ventilation.  (R. at 104.)

The VE responded that, given those limitations, the hypothetical individual could perform simple, light, and unskilled work that included the following jobs: power screwdriver operator, DOT 699.685-026 (SVP: 2, light) with 68,000 jobs nationally; assembler, DOT 929.587-010 (SVP: 2, light) with 105,000 jobs nationally; and bagger, DOT 920.687-018 (SVP: 1, light) with 83,000 jobs nationally.  (R. at 105.)

The ALJ then asked the VE to consider a hypothetical individual with the same mental restrictions but limited to sedentary work with the following limitations: occasionally lifting and carrying 10 pounds; frequently lifting and carrying less than 10 pounds; standing and walking with normal breaks for a total of 2 hours out of an 8-hour workday; and the same nonexertional

limitations as before.  (R. at 105.)  The VE responded that this hypothetical individual would be precluded from all jobs previously described.  (R. at 105.)

Plaintiff's lawyer asked the VE to add to the hypothetical individual the limitation of being only occasionally able to reach, handle, and finger.  (R. at 106.)  The VE responded that this hypothetical individual would be precluded from all the jobs previously mentioned, and that "[o]ccasional bilateral handling or gross manipulation would significantly erode the capacity for performing light work."  (R. at 106.)

Plaintiff's lawyer then asked if an individual who was limited to sitting, standing, or walking for a total of 3 hours out of an 8-hour workday would be eligible for competitive employment.  (R. at 106.) The VE responded that this limitation would eliminate all competitive employment because it did "not meet the minimum standard of sedentary, unskilled work."  (R. at 106.)

C.    **The ALJ's Findings**

The ALJ issued his decision denying benefits on June 25, 2014.  (R. at 64-80.)  At step one, he found that Plaintiff had not engaged in substantial gainful activity since January 17, 2011.  (R. at 69.)  At step two, he found that Plaintiff had the following severe impairments: degenerative disc disease of the spine, status post-surgery; back pain; neck pain; chronic obstructive pulmonary disease; and affective disorder.  (R. at 69.)  Despite those impairments, at step three, he found that Plaintiff had no impairment or combination of impairments that met or equaled the severity of one of the impairments listed in the social security regulations.  (R. at 69.)

Next, the ALJ determined that Plaintiff retained the RFC to perform a reduced range of light work with the following limitations: lift/carry 20 pounds occasionally and 10 pounds frequently; stand/walk and sit for 6 out of 8 hours; occasionally climb ramps/stairs, balance, stoop, kneel, and

crouch; avoid concentrated exposure to fume, odors, dust, gases, and poor ventilation; restricted to simple, routine tasks; and no more than occasional contact with the general public.  (R. at 71.)

At step four, the ALJ determined that Plaintiff had no past relevant work.  (R. at 73.)  At step five, the ALJ relied upon the VE's testimony to find Plaintiff capable of performing work that existed in significant numbers in the national economy, including jobs such as power screwdriver operator, assembler, and bagger.  (R. at 73-74.)  Accordingly, the ALJ determined that Plaintiff had not been under a disability, as defined by the Social Security Act, from January 17, 2011, through the date of his decision.  (R. at 74.)

D.      **New Evidence Submitted to the Appeals Council**

Plaintiff timely appealed the ALJ's decision to the Appeals Council and submitted new evidence consisting of updated medical records from LifeNet on her progress in mental counseling and new medical records from Dennis Williamson, D.C., on her back and neck pain.  (R. at 8-53.) The Appeals Council considered the relevant evidence in conjunction with the ALJ's decision and found that the new information did not provide a basis for changing the decision.  (R. at 1-2.)

## II.   ANALYSIS

A.      **Legal Standards**

1.      **Standard of Review**

Judicial review of the Commissioner's denial of benefits is limited to whether the Commissioner's position is supported by substantial evidence and whether the Commissioner applied proper legal standards in evaluating the evidence.  *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994); 42 U.S.C. § 405(g).  "Substantial evidence is that which is relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion; it must be more than a scintilla,

but it need not be a preponderance." *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995) (quoting

*Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir. 1992)). In applying the substantial evidence

standard, the reviewing court does not reweigh the evidence, retry the issues, or substitute its own

judgment, but rather, scrutinizes the record to determine whether substantial evidence is present.

*Greenspan*, 38 F.3d at 236. A finding of no substantial evidence is appropriate only if there is a

conspicuous absence of credible evidentiary choices or contrary medical findings to support the

Commissioner's decision. *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988).

The scope of judicial review of a decision under the supplemental security income program

is identical to that of a decision under the social security disability program. *Davis v. Heckler*, 759

F.2d 432, 435 n. 1 (5th Cir. 1985). Moreover, the relevant law and regulations governing the

determination of disability under a claim for disability insurance benefits are identical to those

governing the determination under a claim for supplemental security income. *Id.* Thus, the Court

may rely on decisions in both areas without distinction in reviewing an ALJ's decision. *Id.* at 436.

**2.      Disability Determination**

To be entitled to social security benefits, a claimant must prove that he or she is disabled as

defined by the Social Security Act. *Leggett*, 67 F.3d at 563-64. The definition of disability under

the Social Security Act is "the inability to engage in any substantial gainful activity by reason of any

medically determinable physical or mental impairment which can be expected to result in death or

which has lasted or can be expected to last for a continuous period of not less than 12 months." 42

U.S.C. § 423(d)(1)(A). When a claimant's insured status has expired, the claimant "must not only

prove" disability, but that the disability existed "prior to the expiration of [his or] her insured status."

*Anthony*, 954 F.2d at 295. An "impairment which had its onset or became disabling after the special

12

earnings test was last met cannot serve as the basis for a finding of disability." *Owens v. Heckler*, 770 F.2d 1276, 1280 (5th Cir. 1985).

The Commissioner utilizes a sequential five-step analysis to determine whether a claimant is disabled:

1.      An individual who is working and engaging in substantial gainful activity will not be found disabled regardless of medical findings.

2.      An individual who does not have a "severe impairment" will not be found to be disabled.

3.      An individual who "meets or equals a listed impairment in Appendix 1" of the regulations will be considered disabled without consideration of vocational factors.

4.      If an individual is capable of performing the work he has done in the past, a finding of "not disabled" must be made.

5.      If an individual's impairment precludes him from performing his past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if work can be performed.

*Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991) (summarizing 20 C.F.R. § 404.1520(b)-(f) (currently 20 C.F.R. § 404.1520(a)(4)(i)-(v)).  Under the first four steps of the analysis, the burden lies with the claimant to prove disability.  *Leggett*, 67 F.3d at 564.  The analysis terminates if the Commissioner determines at any point during the first four steps that the claimant is disabled or is not disabled.  *Id.*  Once the claimant satisfies his or her burden under the first four steps, the burden shifts to the Commissioner at step five to show that there is other gainful employment available in the national economy that the claimant is capable of performing.  *Greenspan*, 38 F.3d at 236.  This burden may be satisfied either by reference to the Medical-Vocational Guidelines of the regulations or by expert vocational testimony or other similar evidence.  *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987).  After the Commissioner fulfills this burden, the burden shifts back to the claimant

to show that he cannot perform the alternate work.  *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir.

2005).  "A finding that a claimant is disabled or is not disabled at any point in the five-step review

is conclusive and terminates the analysis."  *Loveland v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

**B.**     **Issues for Review**

Plaintiff presents two issues for review:

A.     When making a disability determination, the ALJ is required to consider all
relevant evidence, including opinions from sources who are not "acceptable
medical sources."  Did the ALJ reversibly err when he rejected, without
explanation, the functional capacity evaluation from [Plaintiff's] physical
therapist—a non-acceptable medical source?

B.     The ALJ's assessment of the claimant's administrative hearing testimony
must provide specific reasons for the weight given to the claimant's
statements and must not be based solely on the lack of corroborative
objective evidence.  Did the ALJ reversibly err when he asserted that there
was "no support in the objective medical evidence" to support [Plaintiff's]
allegations without identifying the particular allegations at issue?

(doc. 16 at 4.)

**C.**     **Weighing Medical Opinions**

Plaintiff argues that the ALJ reversibly erred by failing to explain why he rejected the

functional capacity evaluation (FCE) from Mr. Porsch, the physical therapist.  (doc. 16 at 12.)

The Commissioner is entrusted to make determinations regarding disability and should

consider all relevant evidence, including weighing inconsistent evidence.  *See* 20 C.F.R. §§

404.1520b(b), 404.1527(c); *see also* SSR 06-03P, 2006 WL 2329939 at *6.  The Social Security

regulations distinguish between evidence from "acceptable medical sources," which includes

licensed physicians, licensed psychologists, licensed podiatrists, and qualified speech-language

pathologists, and evidence from "other sources," which includes non-acceptable and non-medical

sources.  *See* 20 C.F.R. § 404.1513.  Though evidence from an acceptable medical source is an

14

essential component of a disability claim, the ALJ may consider evidence from "other sources," both medical and non-medical, to show the severity of a claimant's impairment. *See id.* at § 404.1513(d). Evidence from "other sources" includes opinions from nurse-practitioners, physicians' assistants, naturopaths, chiropractors, audiologists, and physical therapists. *See id.* at 404.1513(d)(1). When considering opinions from a physical therapist, the ALJ is "not required to perform the [multi-factor] analysis described . . . in 20 C.F.R. §§ 404.1527(d)(2) and 416.927(d) or to give special weight to the opinion of the physical therapist because the physical therapist is not a treating physician as defined by the regulations." *Walston v. Astrue*, No. 1:08-CV-0167-C, 2010 U.S. Dist. LEXIS 35186 at *12 (N.D. Tex. Feb. 24, 2010). Nonetheless, a physical therapist's report may be used to show the severity of any impairment and how it affects the claimant's ability to work. *See* 20 C.F.R. §§ 404.1513(d), 416.913(d).

Here, Mr. Porsch examined Plaintiff and completed a FCE in which he opined that she could stand and sit for up to 3 hours in an 8-hour workday and was "not at all" able to lift, bend, squat, kneel, twist, push, or pull. (R. at 882, 886.) The ALJ noted that Mr. Porsch met with Plaintiff for an examination where she gave "moderate effort" and "did not finish half of the test." (R. at 72.) The ALJ then gave the FCE results "little weight in this determination" and did not adopt them in determining Plaintiff's RFC. (R. at 72.)

Plaintiff argues that the ALJ failed to "adequately explain" why he rejected Mr. Porsch's opinions in the FCE and that remand is appropriate, citing *Boudreaux v. Soc. Sec. Admin.*, No. 13-4949, 2014 WL 7339022 (E.D. La. Dec. 19, 2014). (doc. 16 at 12-16.) In *Boudreaux*, the court found legal error when the ALJ "summarily disregarded" a physical therapist's FCE simply because it was "not reviewed or signed off on by an acceptable medical source." 2014 WL 7339022 at *1.

15

The court explained that there was "nothing in the regulations or case law suggesting an 'other source' opinion must be approved by an acceptable medical source," and that the ALJ was required to consider the FCE in rendering a decision. *Id.* at *2.

Here, the ALJ considered the physical therapist's FCE and did not "summarily disregard" it solely because it was not approved by a medical source. (R. at 72.) The ALJ gave little weight to the physical therapist's FCE because Plaintiff gave a "moderate effort" during the evaluation and "did not finish half of the test," including the lifting/carrying, climbing, kneeling, and pushing evaluations that were all assessed as "not at all" capable of being performed.[3] (R. at 72, 882.) Moreover, substantial medical evidence from the examining physicians at Parkland (R. at 371, 576, 792) and Dr. Ahn (R. at 589-94) and the non-examining physicians Dr. Kwun (R. at 517-24) and Dr. Rowley (R. at 595-602) support the ALJ's RFC determination regarding Plaintiff's exertional and nonexertional limitations. Accordingly, the ALJ properly considered the physical therapist's FCE by giving it little weight in his decision. *See Porter v. Barnhart*, 200 F. App'x 317, 319 (5th Cir. 2006) (unpublished) (holding that an ALJ did not err by refusing to find limitations based upon a FCE from a chiropractor because "the ALJ was not required to rely on the chiropractor's evaluation in making the RFC finding because a chiropractor is not an acceptable medical source" and other medical evidence did not show significant functional limitations).

The ALJ did not err, and remand is not required on this issue.

**D.   Credibility Determination**

Plaintiff argues that the ALJ reversibly erred by making a credibility finding that "lacks

---

[3] In her reply, Plaintiff contends that these reasons are *post hoc* justifications" that go beyond the "four corners" of the ALJ's decision. (doc. 18 at 1-6.) However, the structure of the ALJ's analysis, namely the identification of specific parts of Mr. Porsch's medical records immediately followed by an assignment of weight to the FCE, makes it clear that these are the reasons for his rejection of the FCE. (R. at 72.)

rationale." (doc. 16 at 16.)

When the ALJ issued his decision, Social Security Ruling: SSR 96–7p[4] required him to follow a two-step process for evaluating a claimant's subjective complaints. SSR 96-7p, 1996 WL 374186 at *2 (S.S.A. July 2, 1996). First, the ALJ must consider whether the claimant had a medically determinable impairment that could reasonably be expected to produce the alleged symptoms. *Id.* Once such an impairment is shown, the ALJ must evaluate the intensity, persistence, and limiting effects of the alleged symptoms to determine the extent to which they limit the individual's ability to do basic work activities. *Id.* If the claimant's statements concerning the intensity, persistence, or limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the ALJ must make a credibility finding regarding the claimant's statements. *Id.*; *Falco v. Shalala*, 27 F.3d 160, 164 (5th Cir. 1994) (citing *Scharlow v. Schweiker*, 655 F.2d 645, 648-49 (5th Cir. 1985)).

The ALJ's credibility determination must be based on consideration of the entire record, including medical signs and laboratory findings, and statements by the claimant and her treating or examining sources concerning the alleged symptoms and their effect. SSR 96–7p, 1996 WL 374186 at *2. The ALJ must also consider a non-exclusive list of seven relevant factors in assessing the credibility of a claimant's statements:

1. the claimant's daily activities;

---

[4]  Effective March 16, 2016, the Social Security Administration eliminated "use of the term 'credibility' from [its] sub-regulatory policy," clarifying "that subjective symptom evaluation is not an examination of an individual's character." SSR 16-3p, 2016 WL 1020935 at *1 (S.S.A. Mar. 16, 2016). When the ALJ issued the decision here, SSR 96-7p was the relevant social security ruling and specifically used the term "credibility." SSR 96-7P, 1996 WL 374186 at *7 (S.S.A. July 2, 1996). This credibility finding is properly analyzed under SSR 96-7p. *See Mayberry v. Colvin*, No. CV G-15-330, 2016 WL 7686850 at *5 (S.D. Tex. Nov. 28, 2016), adopted, 2017 WL 86880 (S.D. Tex. Jan. 10, 2017) (noting that "[b]ecause the text of SSR 16–3p does not indicate the SSA's intent to apply it retroactively, the Court would be disinclined to do so"). Even if SSR 16-3p applied retroactively, however, the outcome would not differ.

2. the location, duration, frequency, and intensity of pain or other symptoms;

3. factors that precipitate and aggravate symptoms;

4. the type, dosage, effectiveness, and side effects of any medication taken to alleviate pain or other symptoms;

5. treatment, other than medication, for relief of pain or other symptoms;

6. measures other than treatment the claimant uses to relieve pain or other symptoms (*e.g.*, lying flat on his or her back);

7. and any other factors concerning the claimant's functional limitations and restrictions due to pain or other symptoms. *Id.* at *3.

Although the ALJ must give specific reasons for his credibility determination, "neither the regulation nor interpretive case law requires that an ALJ name, enumerate, and discuss each factor in outline or other rigid, mechanical form. It suffices when the administrative decision is sufficiently specific to make clear that the regulatory factors were considered." *Prince v. Barnhart*, 418 F. Supp. 2d 863, 871 (E.D. Tex. 2005). Moreover, the Fifth Circuit has explicitly rejected the requirement that an ALJ "follow formalistic rules" when assessing a claimant's subjective complaints. *Falco*, 27 F.3d at 164. The ALJ's evaluation of the credibility of subjective complaints is entitled to judicial deference. *See Carrier v. Sullivan*, 944 F.2d 243, 247 (5th Cir. 1991). The ALJ is in the best position to assess a claimant's credibility, since he "enjoys the benefit of perceiving first-hand the claimant at the hearing." *Falco*, 27 F.3d at 164 n.18.

Here, the ALJ noted the proper standard and two-step analysis for evaluating subjective complaints based "on a consideration of the entire case record." (R. at 71-72.) He then identified Plaintiff's testimony, including her general complaints about her back and neck pain and the numbness in her legs and hands, as well as the specific testimony that she could walk only 50 feet or less, had pain when trying to vacuum, and could not open a jar. (R. at 72.) He next reviewed her

18

medical records from Green Oaks Hospital, LifeNet, Mr. Porsch, Parkland, the SAMCs' opinions, and her X-rays and MRI results.  (R. at 72-73.)  He found overall that her medically determinable impairments could reasonably be expected to produce some of the alleged symptoms, but her statements concerning the intensity, persistence, and limiting effects of these symptoms should be determined to diminish the capacity for basic work activities "only to the extent to which they can reasonably be accepted as consistent with the objective medical and other evidence and the above [RFC]."  (R. at 73.)  Based upon the entire record, the ALJ determined that her testimony and allegations about the limiting effects of her symptoms were not fully credible because there was "no support in the objective medical evidence for her current complaints," and because of her "medical history and degree of medical treatment required" in conjunction with her own "description of her activities of daily living."  (R. at 73.)

Plaintiff argues that the ALJ issued a "single, conclusory credibility finding without explanation" that failed to include her testimony about the "weakness, numbness, and pain" in her upper extremities.[5]  (doc. 16 at 16-18.)  She further argues that the ALJ made the "same conclusory credibility finding" as the ALJ in *Jefferson v. Barnhart*, 356 F. Supp. 2d 663 (S.D. Tex. 2004).  In *Jefferson*, the court found error in a credibility assessment that read, in its totality, that "[s]ubjective complaints are considered credible only to the extent that they are supported by the evidence of record as summarized in the text of this decision."  356 F. Supp. 2d at 679.  The court explained that the ALJ failed to make specific findings because his analysis was conclusory and "not linked to specific medical evidence."  *Id.*  (citing *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000)).  Here,

---

[5]  In her brief, Plaintiff cites to the ALJ's initial "two sentence analysis" on credibility, but she fails to cite or include the following paragraph in the decision that listed additional reasons for the ALJ's credibility finding.  (doc. 16 at 18.)

however, the ALJ made explicit findings that even though he did not doubt that Plaintiff "experience[d] some difficulty," her allegations about her limitations were "not fully credible" based upon the "objective medical evidence," her "medical history and degree of medical treatment required," and her own "description of her activities of daily living."  (R. at 73.)

The ALJ's credibility analysis relied on the same evidence considered when determining Plaintiff's RFC.  (R. at 71-72.)  He first noted that Plaintiff's testimony included allegations of "constant" pain in her back and neck, numbness in her legs and hands, and the inability to vacuum, open a jar, or walk more than 50 feet.  (R. at 72.)  After reviewing the medical evidence, the ALJ determined that these allegations were "not entirely credible" in light of the record as a whole, which included the medical findings and treatment from Parkland, Mr. Porsch, and the SAMCs.  (R. at 72-73.)  The ALJ further stated that Plaintiff's allegations about her limitations, which included the "numbness" and "pain" in her upper extremities, were not entirely credible when compared to her own testimony and description of her activities of daily living, including her testimony on her ability to work 10-12 hours a week at the home health center during the alleged disability period.  (R. at 72-73.)  Though not in a formalistic fashion, the ALJ did address several of the factors listed in SSR 96-7p throughout his credibility analysis section, including the location, duration, frequency, intensity, and limiting effects of her symptoms.  (R. at 72-73.)

The ALJ must consider subjective evidence of pain, but it is within his discretion to determine the pain's disabling nature.  *Dunbar v. Barnhart*, 330 F.3d 670, 672 (5th Cir. 2003). Courts have articulated that the lack of objective medical evidence or treatment may support an ALJ's adverse credibility ruling.  *See Hollis v. Bowen*, 837 F.2d 1378, 1384 (5th Cir. 1988) (recognizing "that an absence of objective factors indicating the existence of severe pain—such as

limitations in the range of motion, muscular atrophy, weight loss, or impairment of general nutrition-can itself justify the ALJ's conclusion"); *Villa v. Sullivan*, 895 F.2d 1019, 1024 (5th Cir. 1990) (stating that the ALJ was not precluded from relying on the lack of prescribed treatment as an indication of nondisability).   Additionally, the ALJ's evaluation of the credibility of subjective complaints is entitled to judicial deference.  *See Carrier*, 944 F.2d at 247.  Plaintiff has not shown that the ALJ erred in his credibility analysis, particularly because his decision shows that he properly considered the record as a whole.  *See Lopez v. Astrue*, 854 F. Supp. 2d 415, 424-25 (N.D. Tex. 2012) (finding that the ALJ properly evaluated the plaintiff's credibility by expressly acknowledging that he "experienced some level of pain and functional loss, but concluded that [the] plaintiff's subjective complaints of pain were out of proportion to the objective medical evidence").  Therefore, remand is not required on this issue.

### III.  CONCLUSION

The Commissioner's decision is **AFFIRMED.**

**SO ORDERED** this 14th day of March, 2017.

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE